**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Miscellaneous Action No. 19-mc-00113-CMA

SECURITIES AND EXCHANGE COMMISSION,

    Petitioner,

v.

JAMES S. KIMMEL,

    Respondent.

---

**ORDER COMPELLING COMPLIANCE WITH ADMINISTRATIVE SUBPOENA
AND DENYING RESPONDENT'S MOTION FOR STAY**

---

This matter is before the Court on Petitioner Securities and Exchange Commission's ("the SEC") Application for Order to Show Cause and for Order Compelling Compliance with Administrative Subpoena ("the Application") (Doc. # 1) and Respondent James Kimmel's Response to Order to Show Cause and Motion for Temporary Stay ("the Motion") (Doc. # 7). Having considered the Application and Motion and documents filed in support thereof, and being fully advised in the matter, the Court grants the SEC's Application and denies Respondent's Motion.

    **I.**    **BACKGROUND**

The SEC is investigating possible insider trading in the securities of Ampio Pharmaceuticals, Inc. ("Ampio"). On October 25, 2016, pursuant to 15 U.S.C. § 78u(a), the SEC issued an Order Directing Private Investigation and Designating Officers to

Take Testimony in an investigation entitled *In the Matter of Ampio Pharmaceuticals, Inc. TISO*2 ("the Formal Order"). (Doc. # 1-2 at 2.)

The SEC alleges that, from approximately April 2015 to August 2018, Respondent James Kimmel ("Mr. Kimmel") appears to have made timely sales of securities after communicating with an Ampio insider and prior to Ampio public announcements that caused its stock price to decline in value. (*Id.* at 3.) The SEC seeks testimony from Mr. Kimmel regarding, *inter alia*, his timely trading in Ampio securities, the reasons for his trades, his communications with individuals associated with Ampio, and his relationship with individuals associated with Ampio. (*Id.*)

On October 22, 2019, the SEC served a subpoena on Mr. Kimmel that required him to appear and testify at the SEC's Denver Regional Office. (*Id*. at 4.) Mr. Kimmel's counsel accepted service of the subpoena on his behalf. On November 8, 2019, Mr. Kimmel's counsel sent the SEC staff a letter stating that Mr. Kimmel would not appear for testimony. In the letter, counsel referenced an ongoing investigation by the United States Attorney's Office for the District of Colorado ("USAO") and stated, "[p]roceeding with a civil investigative deposition in these circumstances unfairly presents Judge Kimmel with a true Hobson's Choice – either waive his Fifth Amendment privilege and put himself at risk of indictment, or assert his Fifth Amendment privilege and impair his civil defense through the use of negative inferences." (Doc. # 1-11 at 1.)

Mr. Kimmel failed to appear for testimony on November 13, 2019. (Doc. # 1-2 at 6.) The instant Application followed, and the Court ordered Mr. Kimmel to show cause why it should not compel his compliance with the SEC's investigative subpoena. (Doc. #

2.) Mr. Kimmel filed a Response to Order to Show Cause and Motion for Temporary Stay. (Doc. # 7.) The SEC filed a reply. (Doc. # 9.)

## II. DISCUSSION

15 U.S.C. § 78u(e) authorizes the SEC to seek an order from this Court requiring compliance with a subpoena in a summary proceeding. *See also* Fed. R. Civ. P. 81(a)(5); *SEC v. Harman Wright Group, LLC*, 18-mc-00190-CMA, 2018 WL 6102758, at *2 (D. Colo. Nov. 21, 2018) (compelling compliance with SEC administrative subpoenas), *aff'd,* 777 F. App'x 276 (10th Cir. 2019). The Court has jurisdiction over this subpoena enforcement action under 15 U.S.C. § 78u(c).

### A. THE *POWELL* TEST

"Courts enforce administrative agency investigative subpoenas if (1) the agency's 'investigation will be conducted pursuant to a legitimate purpose,' (2) the subpoena seeks information that 'may be relevant to the purpose,' (3) 'the information sought is not already within the [agency's] possession,' and (4) all 'administrative steps required ... have been followed.'" *Harman Wright Grp.*, 2018 WL 6102758, at *2 (quoting *United States v. Powell*, 379 U.S. 48, 57–58 (1964) (enforcing IRS subpoena)); *see also Application to Enforce Administrative Subpoenas Duces Tecum of SEC v. Knowles*, 87 F.3d 413, 415 (10th Cir. 1996) (applying *Powell* test to SEC subpoenas). The agency's burden in meeting this test is a "slight one," and "'[t]he requisite showing is generally made by affidavit of the agent who issued the summons and who is seeking enforcement.'" *United States v. Balanced Fin. Mgmt., Inc.*, 769 F.2d 1440, 1443 (10th

Cir. 1985) (quoting *United States v. Garden State Nat'l Bank*, 607 F.2d 61, 68 (3d Cir. 1979)). In the instant case, the SEC has met all four requirements.

First, the SEC's inquiry is being conducted pursuant to a legitimate purpose. "Congress has vested the [SEC] with broad authority to conduct investigations into possible violations of the federal securities laws and to demand production of evidence relevant to such investigations." *S.E.C. v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 741 (1984). The SEC authorized this investigation by issuing a Formal Order on October 25, 2016, to investigate possible violations of federal securities laws. (Doc. # 1-2 at 2.)

Second, the subpoena seeks information that may be relevant to that purpose. "Administrative agencies vested with investigatory power have broad discretion to require the disclosure of information concerning matters within their jurisdiction." *Philips Petroleum Co. v. Lujan*, 951 F.2d 257, 260 (10th Cir. 1991). As a result, relevance is satisfied when the information sought is not "plainly incompetent or irrelevant to any lawful purpose." *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509 (1943) (cited in *Philips Petroleum*, 951 F.2d at 260). The testimony sought by the investigative subpoena relates to Mr. Kimmel's trading in Ampio securities and is, therefore, relevant to the SEC's investigation of possible insider trading of Ampio securities.

Third, the subpoena seeks information that is not already within the agency's possession. The SEC seeks testimony from Mr. Kimmel regarding his timely trading in Ampio securities, the reasons for his trades in Ampio securities, his communications with individuals associated with Ampio, and his relationship with individuals associated

with Ampio. Mr. Kimmel's reasons for trading in Ampio securities are known only to Mr. Kimmel, and the remaining evidence sought is not already within the SEC's possession.

Fourth, all required administrative steps have been followed. Federal securities law authorizes the SEC to designate officers to, *inter alia*, subpoena witnesses, compel witness attendance, take evidence, and require the production of any books, papers, or other documents that the SEC deems relevant or material to its investigation. 15 U.S.C. § 78u(b). The SEC issued a Formal Order in this investigation, which empowers the designated staff members to administer oaths and affirmations, subpoena witnesses, and compel witness attendance. Additionally, the subpoenas at issue were signed by an attorney designated as an officer of the SEC for purposes of this investigation and were served on Mr. Kimmel through his counsel. The Court finds, and Mr. Kimmel does not dispute, that the SEC has met all administrative requirements related to the issuance and service of the subpoenas.

**B.     RESPONDENT'S FIFTH AMENDMENT ARGUMENTS**

Mr. Kimmel moves this Court for a temporary stay pending completion of the USAO criminal investigation into the same conduct. (Doc. # 7 at 6–14.) He argues that "the administrative subpoena places an improper and unreasonable burden on the exercise of [his] Fifth Amendment privilege" because "he either waives the privilege and risks criminal indictment, or he asserts the privilege and risks adverse inferences in a later SEC civil action." (Doc. # 7 at 11.)

The Court finds that the instant subpoena does not improperly or unreasonably burden Mr. Kimmel's Fifth Amendment privilege. Although "the Fifth Amendment

5

protects a party from self-incrimination; it does not protect someone from having to invoke the right to avoid self-incrimination in the first place." *SEC v. Caramadre*, 717 F. Supp. 2d 217, 222 (D.R.I. 2010). The Court finds instructive the District of Rhode Island's decision in *Caramadre*, which compelled targets of a criminal investigation to comply with the SEC's testimonial subpoenas over Fifth Amendment objections. The court explained as follows:

> Respondents cannot be excused from the interviews by predicting that all questions will be off-limits. Instead, the proper procedure is for them to appear for questioning "and as to each question ... elect to raise or not to raise the defense." To hold otherwise could deprive the agency of non-privileged information that may be valuable to the investigation. That risk illustrates the perils of "intrud[ing] into the investigative agency's function."

*Id.* at 223 (first quoting *SEC v. First Fin. Group of Tex., Inc.,* 659 F.2d 660, 668 (5th Cir. 1981); then quoting *SEC v. Howatt,* 525 F.2d 226, 229 (1st Cir. 1975)). Mr. Kimmel may decide to invoke the Fifth Amendment on a question by question basis, but he may not refuse to appear for testimony altogether. *Id.*[1]

Mr. Kimmel also argues that the instant subpoena should not be enforced because it was brought in bad faith. To support this argument, he points to an ongoing

---

[1] The Court finds further support for its decision in the Ninth Circuit's analysis in *Keating v. Office of Thrift Supervision*:

> A defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege. Not only is it permissible to conduct a civil proceeding at the same time as a related criminal proceeding, even if that necessitates invocation of the Fifth Amendment privilege, but it is even permissible for the trier of fact to draw adverse inferences from the invocation of the Fifth Amendment in a civil proceeding.

45 F.3d 322, 326 (9th Cir. 1995). *Keating*'s conclusions apply with even more force in the instant case, where neither civil nor criminal proceedings have been initiated against Respondent.

criminal investigation by the USAO and suggests that the USAO and SEC are collaborating in their investigations. "Effective enforcement of the securities laws requires that the SEC and Justice be able to investigate possible violations simultaneously," *Sec. & Exch. Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368, 1377 (D.C. Cir. 1980), and "[t]he mere existence of simultaneous criminal and civil proceedings does not, on its own, make an agency's civil subpoena unreasonable, or show evidence of 'bad faith.'" *Caramadre*, 717 F. Supp. 2d at 221. The Court finds that there is no competent evidence of bad faith in the instant case, and "[a]bsent evidence of bad faith, the Court must not second-guess the Commission's decisions in carrying out its mandate." *Id*. at 223.[2] If evidence of bad faith is later uncovered, a future court can preclude use of Mr. Kimmel's interview for the purpose of adverse inferences. *See id.* at 223–24.

Mr. Kimmel argues that he is faced with the same "unreasonable burden that lead [sic] the Court to grant a protective order in [*SEC v. Power Securities Corp.,* 142 F.R.D. 321 (D. Colo. 1992)]." Mr. Kimmel's reliance on *Power Securities* to support his request for a stay is misplaced. *Power Securities* involved a stay of **discovery** in civil proceedings, whereas Mr. Kimmel moves the Court to stay an SEC **investigation**. As the SEC points out in its Reply, Mr. Kimmel cites to no authority staying an SEC investigation. To this Court's knowledge, such an order would be unprecedented.

---

[2] It is "not the [C]ourt's role to intrude into the investigative agency's function" because "Congress committed securities investigations to the SEC, not the courts." *Id.* at 221; *see also* 15 U.S.C. § 78u(a) (providing the SEC "may, **in its discretion**, make such investigations as it deems necessary to determine whether any person has violated, is violating, or is about to violate any provision of this chapter" (emphasis added)).

However, even if the Court were to consider a stay in this case under the factors applied to a motion to stay civil discovery in *In re CFS-Related Securities Fraud Litigation*, 256 F. Supp.2d 1227 (N.D. Oklahoma 2003), as Mr. Kimmel urges, the Court would still deny his Motion.[3]

### III.     CONCLUSION

For the foregoing reasons, Petitioner Securities and Exchange Commission's Application for Order to Show Cause and for Order Compelling Compliance with

---

[3] The *In re CFS-Related Securities Fraud Litigation* court considered the following factors:

> (1) the extent to which issues in the criminal case overlap with those presented in the civil case;
> (2) the status of the case, including whether the defendant has been indicted;
> (3) the private interests of the plaintiff in proceeding expeditiously versus the prejudice to plaintiff caused by the delay;
> (4) the private interests of, and burden on, the defendant;
> (5) the interests of the Court; and
> (6) the public's interest.

256 F.Supp.2d at 1236–37. In this case, Mr. Kimmel has not been indicted, and "an unindicted defendant who argues that going forward with a civil proceeding will jeopardize his Fifth Amendment rights usually presents a much less robust case for [the] extraordinary relief" of staying the proceeding (factor two). *Microfinancial, Inc. v. Premier Holidays Int'l, Inc.,* 385 F.3d 72, 79 (1st Cir. 2004); *see also In re CFS-Related Sec. Fraud Litig.*, 256 F. Supp. at 1237 ("Courts have generally declined to impose a stay in the civil proceedings where a defendant is under criminal investigation, but has not yet been indicted."). As previously discussed, Mr. Kimmel does not have a constitutional right to refuse to testify altogether, and he may assert his Fifth Amendment privilege on a question by question basis (factor 4). Further, the SEC would be significantly prejudiced by such a stay (factor 3). "If the SEC suspects that a company has violated the securities laws, it must be able to respond quickly: it must be able to obtain relevant information concerning the alleged violation and to seek prompt judicial redress if necessary." *Dresser Indus., Inc.*, 628 F.2d at 1377. The SEC must complete its investigation and decide whether and against whom to file suit before the relevant statutes of limitations have run, and the toll agreement Mr. Kimmel offers would not apply to other individuals who may have been involved in insider trading of Ampio securities. Finally, the public has an interest in the expeditious administration of justice and the "[p]rotection of the efficient operation of the securities markets and the financial holdings of investors from fraudulent marketing practices" (factor 6). *SEC v. Mantria Corp.*, 09-cv-02676-CMA-MJW, 2012 WL 1901219, at *3 (D. Colo. May 25, 2012). These factors weigh strongly against granting Mr. Kimmel's Motion.

Administrative Subpoena (Doc. # 1) is GRANTED and Respondent James Kimmel's Motion for Temporary Stay (Doc. # 7) is DENIED. Respondent is hereby compelled to comply with the subpoenas in the investigation entitled *In the Matter of Ampio Pharmaceuticals, Inc. TISO*, in accordance with the Securities and Exchange Commission's Application. The Clerk of Court is respectfully directed to close this case.

DATED: May 29, 2020

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge